**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------x
In re:

    DAVID WEBB, INC.

                      Debtor.
------------------------------------------------------------x

Chapter 11

Case No. 09-13997 (BRL)

**CONSENT ORDER (I) AUTHORIZING DEBTOR TO USE CASH COLLATERAL PURSUANT TO 11 U.S.C. § 363; (II) PROVIDING ADEQUATE PROTECTION PURSUANT TO 11 U.S.C. §§ 361 AND 363; AND (III) GRANTING RELATED RELIEF**

Upon the motion dated July 16, 2009 [Docket Entry No. 12] (the "Motion") of the above-captioned debtor and debtor-in-possession (the "Debtor") for, inter alia, entry of a final order (this "Final Order"): (i) authorizing the Debtor to use cash collateral that secures certain obligations of the Debtor owing to FCC, LLC d/b/a/ First Capital ("FCC"), pursuant to section 363 of title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code") subject to the terms and conditions set forth herein, (ii) providing adequate protection to FCC pursuant to sections 361 and 363 of the Bankruptcy Code as more fully set forth herein, and (iii) granting related relief; and this Court having entered an order granting the interim use of cash collateral [Docket Entry No. 18] (the "Interim Order'); and upon the record of the hearing held on August 13, 2009 with respect to entry of this Final Order (the "Final Hearing"); and it appearing that the relief requested in the Motion, to the extent granted by this Final Order, is in the best interests of the Debtor, its estate and creditors; and after due deliberation and consideration, sufficient cause appearing therefor, the Debtor and FCC stipulate and the Court rules as follows:

84392796v1

**RECITALS:**

A. On June 23, 2009 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of New York (the "Chapter 11 Case").

B. The Debtor has retained possession of its property and continues to operate and manage its business as a debtor-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

C. An official committee of unsecured creditors (the "Committee") was appointed in the Chapter 11 Case on July 8, 2009.

D. The Court has jurisdiction over the Chapter 11 Case and the Debtor's property pursuant to 28 U.S.C. §§ 157(b) and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

E. The Final Hearing was held pursuant to Bankruptcy Rule 4001(b)(2). As evidenced by the proof of service filed with the Court [Docket Entry No. 20], notice of the Final Hearing and the relief requested in the Motion was provided by the Debtor in accordance with paragraph 18 of the Interim Order.

The FCC Loan and Security Agreement

F. Prior to the Petition Date, FCC made certain loans and other financial accommodations available to the Debtor and the Debtor's non-debtor affiliate, David Webb (Beverly Hills) Inc. ("BH"), pursuant to that certain Loan and Security Agreement, dated as of July 19, 2004 (as amended, modified, and supplemented from time to time, the "Loan Agreement," and collectively with all guarantees, UCC financing statements and such other documents that evidence and secure the Indebtedness (as defined below), the "Loan Documents").

G. Debtor represents, stipulates, acknowledges and agrees that, as of the Petition Date, the Debtor was indebted to FCC under the Loan Agreement in the aggregate principal amount of not less than $2,835,228.04 (such principal amount, together with all interest, fees, costs, expenses (including reasonable fees and expenses of FCC's counsel), and other amounts heretofore or hereafter accruing thereon or at any time thereafter is collectively referred to herein as, the "Indebtedness").

H. Debtor represents, stipulates, acknowledges and agrees that the Indebtedness and other obligations under the Loan Documents are (i) legal, valid, binding, and enforceable against the Debtor; and (ii) not subject to any contest, objection, recoupment, defense, counterclaim, offset, claim of subordination, claim of recharacterization, claim of avoidance of any nature, attack, or challenge under the Bankruptcy Code, other applicable non-bankruptcy law, or otherwise.

I. As security for the payment of the Indebtedness, Debtor represents, stipulates, acknowledges and agrees that the Debtor granted to FCC, pursuant to the Loan Documents, a security interest in and liens on substantially all of the Debtor's property as more fully described in the Loan Agreement (all such property being defined in the Loan Agreement and similarly defined herein as, the "Collateral," such liens thereon being defined herein as the "Liens," and the cash proceeds thereof, together with all cash collateral as defined in section 363(a) of the Bankruptcy Code, being defined herein as "Cash Collateral").

J. Debtor represents, stipulates, acknowledges and agrees that the Liens are legal, valid, enforceable, non-avoidable, and duly perfected first priority security interests in and liens on the Collateral, as of the Petition Date, without giving effect to this Final Order.

K. The Debtor requires the use of Cash Collateral to the extent provided herein to prevent a disorderly termination or disruption of its business, including the need for the payment of the expenses set forth on the budget for August 2009 attached as Exhibit "A" hereto (the "Budget") as may be updated monthly in accordance with paragraph 12 hereof. Good cause has been shown for the entry of this Final Order. Allowing the use of Cash Collateral therefore is in the best interest of the Debtor's estate and its creditors.

**NOW THEREFORE, IT IS HEREBY AGREED AND ORDERED THAT:**

1. <u>Disposition</u>. The Motion is hereby granted to permit the Debtor's use of the Cash Collateral to the extent and subject to the terms set forth herein. Any objections to the Motion and/or entry of this Final Order that have not previously been withdrawn or resolved are hereby overruled. This Final Order shall be valid and binding on all parties-in-interest and fully effective immediately upon entry.

2. <u>Use of Cash Collateral</u>. Debtor is hereby authorized to use Cash Collateral for the purpose of operating its business within the constraints imposed by the Budget and subsequent Budgets approved by FCC hereunder, through and including the close of business on November 12, 2009 and to perform its obligations hereunder and under the Loan Documents, in accordance with, and subject to, the terms of this Final Order. Notwithstanding any relief granted in any other order hereafter entered by the Court, and subject to the terms and conditions of this Final Order, the Debtor shall not make any expenditures unless, and to the extent that, such expenditures are expressly authorized in this Final Order, the Budget or a subsequent Budget approved by FCC. The Loan Documents are hereby ratified and affirmed, and incorporated herein by this reference, and the Debtor shall perform all of its obligations thereunder except to the extent such documents are modified by or are inconsistent with the terms of this Final Order.

3. (a) <u>Adequate Protection Liens</u>. As adequate protection of FCC's interests in and to the Collateral, including adequate protection against the diminution of the value of the Collateral and the Cash Collateral resulting from the imposition of the stay arising under section 362 of the Bankruptcy Code, or resulting from the pendency of the Chapter 11 Case, FCC is hereby granted valid, binding, enforceable, and duly perfected security interests in and liens on (with such liens having the same extent and priority as the Liens), all property of the Debtor now in existence or hereafter acquired, including, without limitation, new inventory of the Debtor acquired from and after the Petition Date and all proceeds, products, rents, and profits thereof (the "<u>Adequate Protection Liens</u>"); provided, however, as follows:

   (i) <u>Consignment/Memo Goods</u>. Precious stones and/or pearls that are delivered post-petition on consignment to the Debtor in accordance with the custom and practice in the jewelry business and the custom and practice of the Debtor are hereby defined as "<u>Consignment Materials</u>". The consignors of particular Consignment Materials shall remain the owners of such goods (irrespective of whether financing statements are filed by any such consignor and irrespective of whether the Consignment Materials are manufactured or incorporated into a finished piece of jewelry), and shall have the right to recover possession of the Consignment Materials until such consignor is paid for such particular Consignment Materials. Consignors of Consignment Materials shall be deemed to have perfected rights in their respective Consignment Materials, superior to the Adequate Protection Liens of FCC, and, to the extent not theretofore paid for such Consignment Materials, shall have a first lien (superior to the Adequate Protection Liens of FCC) on the proceeds of the sale of a piece of jewelry sold to a customer to the extent of the price to the Debtor of the Consignment Materials incorporated in such piece of jewelry;

   (ii) <u>Chapter 5 Causes of Action</u>. Adequate Protection Liens shall not extend to any causes of action under Chapter 5 of the Bankruptcy Code; provided, however that

the proceeds of any such causes of action shall be deemed to have first been used to satisfy Carveouts (as defined below).

(b) Priority of Adequate Protection Liens. Except as expressly set forth in this Final Order, the Adequate Protection Liens granted herein shall not otherwise be subject to any liens which are avoided and preserved for the benefit of the Debtor's estate under section 551 of the Bankruptcy Code, and shall not be subordinated to or made pari passu with any other lien under section 364(d) of the Bankruptcy Code or otherwise. To the extent that the adequate protection provided herein proves to have been inadequate, FCC shall be deemed to have an allowed claim with priority over all other administrative claims and expenses as provided in section 507(b) of the Bankruptcy Code.

4. Additional Payments. In addition to the Adequate Protection Liens, FCC shall be entitled to, and shall promptly and timely receive from Debtor, no later than 12:00 Noon (Eastern Time) on the third business day of each calendar month, cash payments in an amount equal to $17,500 in respect of interest due and which may become due on the Indebtedness (such amount representing a compromise by the Debtor and FCC between the contract and default rates of interest set forth in the Loan Documents) plus 25% of the preceding month's gross sales proceeds of BH's business operations which portion of the gross sale proceeds from BH, after application thereof to fees, charges and other expenses permitted to be paid to FCC by this Final Order or the Loan Documents, shall be applied to reduce the principal amount of the Indebtedness (the "Additional Payments").

5. Restrictions on the Use of Proceeds. From and after the date of entry of this Final Order, the proceeds of the Collateral and Cash Collateral shall not, directly or indirectly, be used to pay any expenses, payments, and/or disbursements of Debtor or incurred by Debtor except for: (i) those items which are expressly permitted under the Budget or this Final Order, and in such amounts as clearly identified in the Budget and/or this Final Order; and (ii) amounts due to FCC to pay its reasonable attorneys fees (including such attorneys' reasonable expenses) in

connection with the Chapter 11 Case and the preparation and negotiation of, and monitoring of Debtor's compliance with, this Final Order, which amounts shall be reasonable, but shall not otherwise be subject to challenge or approval of the Court, and (iii) reimbursement of FCC for monthly field examinations conducted by FCC under the Loan Documents and to monitor compliance with this Final Order in the amount of $1,700 per examination. In addition to expenditures permitted by the Budget, and without obtaining the prior written consent of FCC, the Debtor is authorized to use, at any given time through the Termination Date (defined below), a maximum amount of $50,000 of Cash Collateral for the sole purpose of post-petition purchases of materials in order to manufacture new inventory (the "New Materials Basket"). To the extent that inventory manufactured with materials credited against the New Materials Basket is sold and such materials are paid for from the sale of such inventory, such payment shall be credited against and be deemed to reduce the amounts outstanding in the New Materials Basket, and Debtor shall be enabled to make additional purchases up to the $50,000 maximum. For the avoidance of doubt, the aforementioned $50,000, while otherwise outside the constraints of the Budget, is the maximum amount of Cash Collateral that may be in use at any given time for such purpose prior to the Termination Date without obtaining the prior written consent of FCC, and is not subject to the 15% variation described in paragraph 7(i) below. Any request to exceed such $50,000 limit shall be in writing (which may be an e-mail) and contain reasonable detail concerning the nature and purpose of the request and delivered to FCC, its counsel and counsel to the Committee. FCC will use reasonable efforts to respond to any such request within one (1) business day. Consignment Materials delivered to Debtor, to the extent paid for from the proceeds of the sale of jewelry incorporating such Consignment Materials shall not be included in the purchase limits of the New Materials Basket, but to the extent paid for from any other source of Cash Collateral, shall be included in such purchase limits.

6. In consideration of the consent to use Cash Collateral as provided herein, including the carve-outs provided below, in no event shall any costs or expenses of

administration be imposed upon FCC pursuant to sections 105(a), 506(c) and/or 552 of the Bankruptcy Code and the right to seek imposition of such costs or expenses is hereby waived by the Debtor, its successors and assigns, including any trustee that may be appointed in the Chapter 11 Case.

7. <u>Termination</u>. Notwithstanding anything herein or in the Loan Documents, the Debtor shall no longer, pursuant to this Final Order, the Loan Documents, or otherwise, be authorized to use Cash Collateral (and the limited consent herein to the use of Cash Collateral shall be terminated) from and after a date (the "<u>Termination Date</u>") which is four (4) business days after service upon the Debtor and its counsel of a written notice identifying the applicable Termination Event (as defined below) and, if applicable, Debtor's noncompliance with the Budget or this Final Order, with a copy to the U.S. Trustee and the Committee's counsel, of the occurrence and continuance of any of the following events (any such event shall be referred to as a "<u>Termination Event</u>"):

(i) Non-compliance by the Debtor with any term or provision of the Budget or this Final Order; provided, however, the Debtor's expenditures may vary from the Budget in an aggregate amount not to exceed 15% of the total expenditures set forth in the Budget.

(ii) The offer for sale by the Debtor of inventory at a price below 65% of Debtor's actual cost without obtaining the prior written consent of FCC.

(iii) The failure of the Debtor to deliver to FCC, on a bi-weekly basis, reports in form and substance reasonably satisfactory to FCC showing each expenditure of Cash Collateral and certifying that such expenditures are in accordance with the Budget, together with the reports required by paragraph 11 hereof.

(iv) The earliest to occur of the following: (a) the close of business on November 12, 2009; (b) the filing of any motion to sell any of the Debtor's assets outside the ordinary course of business that does not provide for the payment of the net proceeds

of such sale to FCC on the sale closing date; provided that in no event shall such a motion be filed which, if approved, would violate clause (ii) of this paragraph 7; (c) the lapse or termination of Debtor's exclusive period to file and solicit acceptances of a chapter 11 plan pursuant to section 1121 of the Bankruptcy Code; (d) the filing of a chapter 11 plan that does not provide for the indefeasible payment of the Indebtedness in full in cash on the effective date of such plan; (e) conversion of the Chapter 11 Case to a case under chapter 7 of the Bankruptcy Code; (f) dismissal of the Chapter 11 Case; (g) the filing of a motion by the Debtor seeking Court approval of financing pursuant to section 364 of the Bankruptcy Code to be provided by either or both of Stanley Silberstein and Nina Silberstein (the "Guarantors") or any entity controlled by or affiliated with either of the Guarantors prior to the Guarantors having contributed, in the aggregate, $250,000 of additional equity capital to the Debtor; provided, however, that FCC reserves all of its rights, claims and defenses with respect to any motion made in this case to approve financing pursuant to section 364 of the Bankruptcy Code or the use of cash collateral without FCC's consent pursuant to section 363 of the Bankruptcy Code; (h) the entry of an order appointing a trustee or an examiner with expanded powers in the Chapter 11 Case; and (i) the automatic stay is lifted as to any party in order to permit foreclosure on any of the Collateral.

8. **Rights upon Termination**. On the Termination Date, the Debtor shall cease all use of Cash Collateral and FCC shall be entitled to an emergency hearing before the Court with respect to lifting the automatic stay under section 362 of the Bankruptcy Code, which hearing shall be conducted as soon as the Court's schedule will allow with limited and shortened written notice to Debtor's counsel, the Committee's counsel and the U.S. Trustee (which notice shall be not less than five (5) business days). As to the issue of whether, in fact, a Termination Event has occurred and is continuing, any opposing party shall have the burden of proof that a Termination Event has not occurred; provided, however, that nothing herein shall prohibit the Debtor from

moving to seek Court approval to use Cash Collateral and FCC reserves all of its rights and defenses with respect to any such motion.  Notwithstanding the occurrence of the Termination Date or anything herein to the contrary, all of the rights, remedies, benefits, and protections provided to FCC under this Final Order shall survive the Termination Date.  In no event shall FCC be subject to the equitable doctrine of marshalling or any other similar doctrine with respect to any of the Collateral, Cash Collateral or otherwise.

9. <u>Limitations on Cash Collateral Use</u>.  Notwithstanding anything to the contrary herein, no proceeds of the Collateral or the Cash Collateral shall be used for the purpose of:  (i) objecting to, challenging or contesting in any manner, or in raising any defenses to, the amount, validity, extent, perfection, priority or enforceability of the Indebtedness or any liens or security interests with respect thereto (but not including any investigation related thereto which shall be subject to the limitations set forth in paragraph 10), or any other rights or interest of FCC, any objections to the Loan Documents, or in asserting any claims or causes of action against FCC, including, without limitation, for lender liability or pursuant to sections 105, 510, 544, 547, 548, 549, or 550 of the Bankruptcy Code, applicable, non-bankruptcy law or otherwise; (ii) selling any of the Collateral outside the ordinary course of business except as specifically permitted in writing by FCC or by order of the Court, subject to FCC's rights to object to any motion for such a sale and provided that the net proceeds of such sale shall be paid to FCC and no such motion shall be made which seeks to violate clause (ii) of paragraph 7 hereof; (iii) incurring any new indebtedness; or (iv) modifying the rights of FCC under this Final Order or the Loan Documents.

10. <u>Investigation Period</u>.  The Committee and other parties in interest with standing shall be permitted 60 calendar days from the date of entry hereof (the "<u>Investigation Period</u>") to investigate (but in no event shall more than $10,000 in Cash Collateral be spent by Committee professionals for such investigation) and challenge only by filing an adversary proceeding: (i) the validity, enforceability, priority, perfection, or amount of the Debt or FCC's security interests; or (ii) assert any claims or causes of action against FCC.  If no such adversary proceeding is filed

by the conclusion of the Investigation Period: (a) the Indebtedness shall constitute an allowed claim (without the necessity of filing a proof of claim) against the Debtor and shall not be subject to any contest, objection, recoupment, defense, counterclaim, offset, claim of subordination, claim of recharacterization, claim of avoidance of any nature, attack or challenge under the Bankruptcy Code, other applicable non-bankruptcy law, or otherwise by the Debtor, any trustee, the Committee or any other person or entity; (b) the Liens on the Collateral shall be deemed legal, valid, binding, enforceable, duly perfected, not subject to defense, counterclaim, offset of any kind, or subordination, and such liens are otherwise unavoidable; and (iii) FCC shall not be subject to any other or further claims, counterclaims, causes of action, lawsuits, or challenges by any party-in-interest or any successor thereto.

11. <u>Certain Reporting Requirements</u>. The Debtor shall certify to FCC and its counsel in writing by 4:00 p.m. (Eastern Time) on the Tuesday of every other week, in continuation of the similar certification requirements in paragraph 10 of the Interim Order (i) that Debtor spent the Cash Collateral only in accordance with the Budget for the immediately preceding two-week period; and (ii) the gross sale proceeds of BH. With such written certification, Debtor shall provide FCC and its counsel (with copies to counsel for the Creditors' Committee) with written reports in form and substance satisfactory to FCC for the subject period setting forth: (a) all cash receipts by Debtor and the Debtor's total cash and cash equivalents as of the date of such report; (b) all payments made by the Debtor; (c) copies of all invoices for the sale of inventory by the Debtor, together with documentation showing the Debtor's cost for each such item of inventory; (d) a current inventory list; (e) all orders to purchase inventory from Debtor; and (f) the updated weekly actual performance compared to the Budget, line-item by line-item.

12. <u>Subsequent Budgets</u>. The Debtor shall provide an updated proposed monthly Budget on the 25th of each month commencing August 25, 2009 for the following month by providing a copy thereof to FCC, its counsel and counsel for the Creditors' Committee. If FCC does not object to the Budget within 5 days of the receipt thereof in writing (which writing may

be an email), such Budget shall be deemed to be approved and shall serve as the Budget for such following month for purposes of this Order. If, within 5 days of receipt of the Budget, FCC objects to expenditures for one or more line items in the proposed Budget, in whole or in part, then, unless FCC and the Debtor consensually resolve such objection, the Debtor shall not use Cash Collateral for the disputed item(s), provided, however, that the Debtor shall have the right to terminate this Consent Order and move to seek the non-consensual use of Cash Collateral subject to all the rights, claims and defenses of FCC with respect to any such motion. Notwithstanding such termination by the Debtor or anything herein to the contrary, all of the rights, remedies, benefits, and protections provided to FCC under this Final Order shall survive the termination.

13. <u>Carveout</u>. Notwithstanding any provision of this Final Order or the Loan Documents to the contrary, if sufficient funds are not otherwise available from the Debtor's estate from unencumbered assets, FCC will exclude from the Liens and the Adequate Protection Liens and make available to the Debtor's estate for payment of the following (the "<u>Carveouts</u>"): (i) the quarterly fees of the United States Trustee required to be paid pursuant to 28 U.S.C. § 1930(a) and (b); (ii) the allowed fees and expenses payable under Sections 330 and 331 of the Bankruptcy Code to professionals retained by the Debtor in the Chapter 11 Case and professionals retained by the Committee, in an aggregate amount for all such professionals not to exceed $30,000 accruing prior to the occurrence of the Termination Date less any amounts theretofore paid to such professionals from Cash Collateral, and (iii) $10,000 for use by a chapter 7 trustee in the event the Chapter 11 Case is converted to a case under chapter 7 of the Bankruptcy Code. Such amounts are the identical Carveouts provided for in the Interim Order and are not intended to supplement such Carveouts and are set forth herein merely to confirm their continued existence.

14. <u>Execution of Documents</u>. Debtor shall execute and deliver to FCC all such agreements, financing statements, instruments, and other documents as FCC may reasonably

request to evidence, confirm, validate, or perfect the liens granted pursuant hereto. Notwithstanding the foregoing, all liens granted herein shall, pursuant to this Final Order, be and they hereby are, deemed perfected, and no further notice, filing, or other act shall be required to effect such perfection; provided, however, if FCC, in its sole discretion, chooses to file such mortgages, financing statements, notices of liens and security interests, and other similar documents, all such mortgages, financing statements, or similar instruments shall be deemed to have been filed or recorded at the time and on the date of entry of the Interim Order.

15. <u>Access to Debtor</u>. Debtor shall permit representatives, agents, and/or employees of FCC to have, on a monthly basis and more frequently upon reasonable notice, access to its premises and to the premises of BH, and records during normal business hours and shall cooperate, consult with, and provide to such persons all such information as they may reasonably request. Debtor shall also permit representatives, agents, and/or employees of FCC to observe Debtor's conduct and compliance with the terms and provisions of this Final Order and the Loan Documents.

16. <u>Successors</u>. This Final Order shall be binding upon all other parties-in-interest, including, without limitation, Debtor and Debtor's successors and assigns (including, without limitation, any trustee, estate administrator, responsible person or representatives or other fiduciary or similar person hereafter appointed as a legal representative of the Debtor, or with respect to the property of Debtor's estate), the Committee, any other committee that may be appointed in the Chapter 11 Case, and the Debtor's creditors.

17. <u>No Deemed Control</u>. By consenting to this Final Order, FCC shall not be deemed to be in control of the Debtor or its operations or to be acting as a "responsible person," "managing agent," or "owner or operator" with respect to the operation or management of Debtor.

18. <u>Subsequent Reversal or Modifications</u>. In the event any or all of the provisions of this Final Order are hereafter modified, amended, or vacated by a subsequent order of this or any

other Court, no such modification, amendment, or vacation shall affect the validity and enforceability of any lien or priority authorized or created hereby. Notwithstanding any such modification, amendment, or vacation, any claim or lien granted to FCC hereunder arising prior to the effective date of such modification, amendment, or vacation shall be governed in all respects by the original provisions of this Final Order, and FCC shall be entitled to all of the rights, remedies, privileges, and benefits, including the liens and priorities granted herein, with respect to any such claim.

19. <u>No Waiver of Rights</u>. Notwithstanding anything to the contrary herein, this Final Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, or otherwise impair: (i) any of the rights of FCC under the Bankruptcy Code or under non-bankruptcy law, including without limitation, the right of FCC to (a) request additional adequate protection of its interests or relief from or modification of the automatic stay under section 362 of the Bankruptcy Code, (b) request conversion of the Chapter 11 Case to chapter 7, and/or (c) propose, subject to the provisions of section 1121 of the Bankruptcy Code, a chapter 11 plan; or (ii) any other rights, claims, or privileges (whether legal, equitable, or otherwise) of FCC. The rights and obligations of the Debtor and the rights, claims, security interests, liens, and priorities of FCC arising under this Final Order are in addition to, and not in lieu or substitution of, the rights, obligations, claims, security interests, liens, and priorities of FCC under the Loan Documents.

20. <u>Binding Effect</u>. The consents hereto may be executed in one or more counterparts, each of which, when taken together shall constitute one and the same document. A signature transmitted by facsimile shall be deemed an original signature and the submission of the Final Order to the Court with conformed signatures of consenting parties shall be deemed a representation to the Court by counsel for the Debtor that each such consent has been obtained.

21. <u>Effect of Representations on Committee</u>. The representations, stipulations, and/or acknowledgments made by Debtor in this Order, shall be binding upon the Debtor, but such

representations, stipulations, and/or acknowledgments shall not in any way bar the Committee from bringing a challenge within the time periods as set forth in paragraph 10 of this Final Order.

Dated: New York, New York
      August__, 2009

_____
**UNITED STATES BANKRUPTCY JUDGE**

**ACKNOWLEDGED, CONSENTED AND AGREED TO:**

| ALTER, GOLDMAN & BRESCIA LLP | KATTEN MUCHIN ROSENMAN LLP |
|---|---|
| *Attorneys for David Webb Inc.* | *Attorneys for FCC, LLC d/b/a First Capital* |
| By:**/s/ Bruce R. Alter** | By:**/s/ Jeff J. Friedman** |
|     Bruce R. Alter |     Jeff J. Friedman |
| 550 Mamaroneck Avenue |     Merritt A. Pardini |
| Suite 510 | 575 Madison Avenue |
| Harrison, New York 10528 | New York, NY 10022-2585 |
| Telephone: (914) 670-0030 | United States of America |
| Facsimile: (914) 670-0031 | Telephone: (212) 940-8800 |
| | Facsimile: (212) 940-8776 |