**ALTER, GOLDMAN & BRESCIA, LLP**  
**550 MAMARONECK AVENUE**  
**SUITE 510**  
**HARRISON, NEW YORK 10528**  
**(914) 670-0030**

Hearing Date:  May 20, 2010  
Hearing Time:  10:00 a.m.

BRUCE R. ALTER (0457)  
DANA P. BRESCIA (0501)

UNITED STATES BANKRUPTCY COURT  
SOUTHERN DISTRICT OF NEW YORK  
-------------------------------------------------------------x  
In re:

    DAVID WEBB, INC.                           Chapter 11  
                                                         Case No. 09-13997(brl)

                          Debtor.  
-------------------------------------------------------------x

**APPLICATION FOR ORDER PURSUANT TO SECTIONS 363(b), (f) AND (m)
OF THE BANKRUPTCY CODE AND BANKRUPTCY RULES 2002 AND
6004 AUTHORIZING AND APPROVING CONTRACT OF SALE WHICH PROVIDES FOR THE
SALE OF SUBSTANTIALLY ALL OF THE DEBTOR'S ASSETS FREE AND CLEAR OF ALL
LIENS, CLAIMS, ENCUMBRANCES AND INTEREST AND GRANTING GOOD FAITH
<u>PURCHASER STATUS TO FRIENDS OF WEBB, LLC</u>**

**TO:    THE HONORABLE BURTON R. LIFLAND**  
          **UNITED STATES BANKRUPTCY JUDGE**

      David Webb, Inc., the above captioned debtor and debtor-in-possession (hereinafter referred to as "Debtor"), by its attorneys, Alter, Goldman & Brescia,, LLP, as and for its application for an order pursuant to Sections 363(b), (f) and (m) of Title 11 of the United States Code (the "Bankruptcy Code") and Federal Rules of Bankruptcy Procedure ("Bankruptcy Rule(s)") 2002 and 6004 authorizing and approving the sale of substantially all of Debtor's assets (the "Purchased Assets"), pursuant to a contract of sale dated April 23, 2010, between the Debtor, as seller, and Friends of Webb, LLC ("Friends"), as buyer, or ("Purchaser") free and clear of all liens, claims, encumbrances and interests of any kind and granting good faith purchaser status for Friends in connection therewith, together with other related relief, respectfully represents as follows:

## Jurisdiction

1. This Court has jurisdiction over this Application pursuant to 28 U.S.C. §§ 157 and 1334 and the "Standing Order of Referral of Cases to Bankruptcy Judges" for the Southern District of New York, dated July 10, 1984 (Ward, C.J.). Venue of these proceedings and this Application is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (M), (N) and (O).

## Background

2. On June 23, 2009 (the "Filing Date"), the Debtor filed a voluntary petition for reorganization pursuant to Chapter 11 of the Bankruptcy Code. The Debtor has continued in possession of its property and the management of its business affairs as a debtor-in-possession pursuant to §§1107 and 1108 of the Bankruptcy Code.

3. An Official Committee of Unsecured Creditors has been appointed. No trustee or examiner has been appointed.

4. The Debtor is a family owned retail jewelry business which has operated for over sixty (60) years. Debtor has approximately 30 employees. Debtor leases the premises in which it operates. The Premises consist of a retail store, office space and a factory from which Debtor produces its own jewelry product. Debtor owns 100% of the stock of David Webb (Beverly Hills), Inc. ("DWBH") which is located in Beverly Hills, California.

5. All of the Debtor's assets are subject to a secured lien held by FCC, LLC, d/b/a First Capital, ("FCC"), pursuant to pre-petition agreements between Debtor and FCC, and various interim, and ultimately a Final Cash Collateral Order of this Court dated November 12, 2009.

## The Sale Efforts During the Chapter 11 Case

6.  Very early in the case, it became evident to Debtor and Debtor's advisors that the Debtor's business could not generate a profit in this economy and that the way to maximize the value of Debtor's inventory of both finished jewelry pieces and raw materials and to take advantage of Debtor's vast quantity of unique jewelry molds, and to recover money for the trade name and good will of the Debtor, would be to sell the business to a third party purchaser.

7.  Debtor began contacting industry sources, suppliers, vendors, customers and competitors in an effort to sell the business.

8.  A list of the people contacted and with whom serious discussions were held concerning the sale of Debtor is set forth as follows:

David Mitchell
Mitchell Holdings LLC
41 East 60th Street
New York, NY 10022

Richard Tilles with Mark Emanuel and Robert Saidian
608 5th Avenue
New York, NY 10020

Betteridge Jewelers
117 Greenwich Avenue
Greenwich, CT 06830-5597

| Stuart Singer with | John Birnbach |
| --- | --- |
| 555 5th Avenue | 576 5th Avenue |
| New York, NY 10017 | New York, NY 10017 |

Alex Vock
ProVockative Gems
608 5th Avenue
New York, NY 10020

John Block
Block-Guest Group
630 5th Avenue
New York, NY 10111

Jadine S. Wong
1420 Taylor Street #4
San Francisco, CA  94133

Paul McCann
Bettina Sturm
35 West 54th Street, Apt. 4
New York, NY  10019

Peter Schneirla
Bruce Cahan
Tiffany & Co.
555 Madison Avenue
New York, NY  10022

Chris del Gatto
Circa Jewels
415 Madison Avenue
New York, NY  10017

Claudio Salvati
8 v. Drapperie
40124 Bolgna, Italy

9. In addition, Debtor's professionals conducted meetings and negotiations with many of the persons set forth above. The negotiations began in August 2009, and have continued on a virtual daily basis until the date that the Contract was signed by the parties to the proposed sale.

10. Debtor has made a maximum effort to receive the highest possible sale price for its assets and its business and has left no stone unturned in its desire to achieve the highest and best offer.

11. Since the proposed sale will yield an equity to Debtor's principals, the officers of Debtor who negotiated this sale had every motivation to receive, and believe they have received the highest and best offer.

**The Contract of Sale**

12. The Debtor proposes to sell the Purchased Assets (as defined in Section 2.1 of the Contract) to Friends, pursuant to a Contract of Sale, dated April 23, 2010, a copy of which is

annexed hereto as Exhibit "A" (the "Contract").

13. This sale is in the best interests of the creditors of this chapter 11 estate in that it will yield sufficient proceeds to fund a 100% distribution to creditors and a substantial distribution to the equity holders as well.

14. The following are some of the key provisions of the Contract of Sale:

    a. <u>Purchase Price</u>: The Purchase Price for the Purchased Assets is Eleven Million ($11,000,000.00) Dollars of which Eight Million ($8,000,000.00) Dollars is payable at the closing, (as defined in the Contract), less the deposit of Two Million ($2,000,000.00) Dollars placed by Friends prior to the return date of this motion. The balance of Three Million ($3,000,000.00) Dollars is payable in two annual installment, of One Million Five Hundred Thousand ($1,500,000.00) Dollars each, on the 1st and 2nd anniversary date of the closing, and bear interest at six (6%) percent per annum.

    b. <u>Assets to be Sold</u>: The Purchased Assets are specifically described in Section 2.1 of the Contract.

    c. <u>Escrow</u>: The deposit of Two Million ($2,000,000.00) Dollars, and the balance of the net proceeds of sale, after paying such obligations of Debtor as are set forth in this motion, will remain in escrow, pending the further Order of this Court.

    d. <u>Closing:</u> The closing will take place within five (5) business days from the day that the Order of this Court approving the sale becomes final and non-appealable.

**Additional Documents and Agreements in Connection with the Sale**

15. In addition to the Contract of Sale, upon approval of the sale to Friends, the Purchaser has agreed to engage Stanley Silberstein, who has served as the Chief Executive Officer of the Debtor for more than twenty (20) years as a consultant to the Purchaser. The term of his proposed Consulting Agreement will be one (1) year and his annual compensation for his services will be Two Hundred and Fifty Thousand ($250,000.00) Dollars. A copy of the proposed Consulting Agreement is attached to the Contract of Sale as an exhibit and contains various restrictions on the activities of Stanley Silberstein both during the consulting period and thereafter.

16. Purchaser and Debtor have entered into an Inducement Agreement, a copy of which is attached to the Contract of Sale. The essential terms of the Inducement Agreement

require the Silberstein family, who own all of the equity interest in the Debtor to pay to Purchaser the sum of One Million ($1,000,000.00) Dollars under certain conditions more fully set forth in the Inducement Agreement.  Such Inducement Agreement is a material inducement to Purchaser's willingness to enter into the Contract of Sale, and therefor, the Debtor, as the Seller of the Purchased Assets, is receiving a substantial benefit from the Inducement Agreement.  Debtor is essentially guaranteeing to the Purchaser that it is not seeking more than the Eleven Million ($11,000,000.00) Dollar purchase price; that the cash portion of the purchase price, ($8,000,000.00) is sufficient to pay all creditors of the Debtor's estate in full and that the overage is exclusively for the benefit of the equity holders.  Such assurance to Purchaser is a reasonable component of the negotiations between the parties, an essential element of the negotiations, and will only impact upon the equity holders, but will not effect any creditor of the Debtor.

## Relief Requested and the Legal Basis Therefor

17. Debtor submits this Application for authority to sell the Purchased Assets pursuant to the terms and provisions of the Contract, free and clear of all liens, claims and encumbrances, pursuant to Sections 363(b) and (f) of the Bankruptcy Code and Bankruptcy Rules 2002 and 6004.

18. Section 363(b)(1) of the Bankruptcy Code provides, in pertinent part, as follows:

> "The trustee, after notice and a hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate…"

19. In fact, Bankruptcy Rule 6004 specifically addresses the procedures required for a private sale, as contemplated herein and provides as follows:

> (f) Conduct of sale not in the ordinary course of business
> (1) Public or private sale
> All sales not in the ordinary course of business may be by private sale or by public auction.

20. "When a debtor desires to sell an asset, its main responsibility, and the primary concern of the bankruptcy court, is the maximization of the value of the asset sold." *In re Integrated Resources, Inc.*, 135 B.R. 746, 750 (Bankr. S.D.N.Y. 1992), *aff'd*. 147 B.R. 650 (S.D.N.Y. 1992).

21. The Debtor believes that the purchase price for the sale of the Purchased Assets is the highest and best price and that the best interests of the estate and its creditors shall be well served with the proposed sales since it will result in a 100% distribution to all administrative, secured, priority and unsecured creditors of the Debtor's estate, and a return to equity.

22. In addition, Purchaser is a sophisticated purchaser with extensive experience in the jewelry industry. It has been represented by separate counsel from the outset of its negotiations with the Debtor and has no connection or relationship with the Debtor or any of its officers, directors, shareholders or principals. The transaction proposed herein is therefore completely "arms length" in nature.

23. In light of the foregoing, the Debtor submits that the private sale of the Purchased Assets is reasonable and a sale at auction, subject to higher and better offers, is not warranted as it will not yield any greater recovery to the creditors of the Debtor's estate. Instead, the Debtor believes that an auction will only result in higher administrative expenses to the Debtor which will in turn reduce the ultimate distribution to its equity holders.

## REQUIREMENTS FOR PRE-CONFIRMATION SALE

24. The Debtor has determined that the best course of action with respect to the

chapter 11 proceeding is to confirm a plan of reorganization. However, it is in the best interest of the estate to obtain immediate approval of the Contract so as to comply with the requirements of the contract vendee which has made clear its desire to close on the purchase quickly.

25. It is well settled that a sale of a debtor's assets may take place prior to the filing and confirmation of a plan of reorganization if supported by the sound business judgment of the debtor's management. *See In re Global Crossing Ltd.*, 295 B.R. 726, 743 (Bankr. S.D.N.Y. 2003); *Official Comm. Of Unsecured Creditors of LTV Aerospace and Defense Co. v. LTV Corporation (In re Chateaugay Corp.)*, 973 F.2d 141, 143-144 (2d Cir. 1992); *Committee of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1071 (2d Cir. 1983).

26. As set forth above, sound business judgment exists herein for the sale of the Purchased Assets to Purchaser. This proposed sale will yield sufficient funds to pay all creditors in full as well as yield a significant return to equity. The Debtor believes that the proposed purchase price is the highest and best offer and that the estate will not benefit by conducting an auction, and, in fact, subjecting the estate to a new and expensive marketing campaign considerable additional rent and other operating expenses. In addition, an auction process would be duplicative of efforts already undertaken by the Debtor and would be a waste of estate resources, especially in light of the current state of the depressed jewelry industry

27. Based upon the foregoing, it is respectfully submitted that sound business judgment exists for a pre-confirmation sale of the Purchased Assets on the terms and conditions set forth in the Contract.

**SALE FREE AND CLEAR OF ALL
LIENS, CLAIMS AND ENCUMBRANCES**

28. Section 363(f) of the Bankruptcy Code provides that a debtor in possession may sell property free and clear of liens, claims and encumbrances with any such encumbrances attaching to the net proceeds of the sale, if one of the following conditions is satisfied:

(1) applicable nonbankruptcy law permits the sale of such property free and clear of such interest;

(2) the lienholder or claimholder consents;

(3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;

(4) such interest is in bona fide dispute; or

(5) the lienholder or claimholder could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

See 11 U.S.C. §363(f).

**Lien on the Purchased Assets**

29. All of Debtor's assets, including the Purchased Assets are encumbered by a single secured lien and security interest held by FCC, the present balance due by Debtor to FCC, after properly applying all adequate protection payments made by Debtor to FCC, during the chapter 11 period, is approximately Two Million Eight Hundred Thousand ($2,800,000.00) Dollars.

30. The total current amount due to FCC from the Debtor on account of the FCC Lien of approximately $2.8 million is subject to further clarification with the tender of a payoff statement by FCC to the Debtor prior to closing on the sale of the Purchased Assets.

31. There are no other liens or secured claims encumbering the Purchased Assets. There are administrative claims existing, as of the date hereof, of approximately Five Hundred Thousand ($500,000.00) Dollars (which may be reduced by payments made by Debtor in the normal course of business), and general unsecured claims of approximately Four Million ($4,000,000.00) Dollars, which includes Debtor's landlord's lease termination claim under

Section 502(b)(6).

32. As described above, the purchase price pursuant to the proposed Contract exceeds the anticipated allowed claims assertable against the estate, including administrative, secured, priority and unsecured claims, and accordingly, Section 363(f) is satisfied.

**REQUEST FOR AUTHORIZATION TO PAY CERTAIN
PRE-PETITION SECURED DEBTS AND ADMINISTRATIVE EXPENSE
PRIOR TO CONFIRMATION OF A PLAN OF REORGANIZATION**

33. In connection with the closing of the Contract, the Debtor intends to pay at closing, certain pre-petition debt specifically its secured debt to FCC. Furthermore, Debtor has committed to the payment of its landlord's administrative post-petition claim, which is based upon post-petition rent and real estate taxes due, and is in the approximate sum, as of the date hereof, of Three Hundred Eighty Thousand ($380,000.00) Dollars. This includes monthly rent of One Hundred Forty-two Thousand ($142,000.00) Dollars, which may be paid by Debtor, in the normal course of business, prior to the return date of this motion. Debtor seeks to utilize the sale proceeds, when received to pay the landlord's post-petition administrative claim.

34. Outside of the Chapter 11 process, it is customary for the seller in a transaction to pay at closing, the payoff of its mortgagee.

35. In the context of a Chapter 11 proceeding, however, the Debtor is prohibited from paying any pre-petition debts.

36. The Debtor seeks authority to pay FCC and its landlord's administrative claim at closing pursuant to 11 U.S.C. Sections 105 and 363(b).

37. The Debtor contemplates setting aside approximately Four Million Eight Hundred Thousand ($4,800,000.00) Dollars for the payment of general unsecured claims of Four Million ($4,000,000.00) Dollars and administrative claims, including professional fees to be awarded, in the approximate sum of Three Hundred Thousand ($300,000.00) Dollars; an appropriate application to the Court will ultimately be filed by Debtor which will seek approval thereof

pursuant to Section 330 of the Bankruptcy Code.

38. The Debtor respectfully suggests that the Court has the requisite authority to enter such an order pursuant to Sections 363(b) and 105 of the Bankruptcy Code.

39. Section 105 of the Bankruptcy Code provides as follows:

(a) The court may issue any order, process or judgment that is necessary or appropriate to carry out the provisions of this title.

40. The pre-confirmation sale, and the necessity for the relief requested hereby, is exactly the type of situation envisioned by Section 105.

41. In light of the general prohibition on payment of pre-petition claims prior to confirmation of a plan of reorganization, and the apparently contradictory nature of a pre-confirmation sale pursuant to Section 363(b) of the Bankruptcy Code, the Debtor requests entry of an order authorizing it to pay such pre-petition secured claim, closing costs and other charges outside of a confirmed plan of reorganization, in its business judgment, as may be required to close the sale transaction contemplated hereby.

## **NOTICE OF SALE AND HEARING**

42. Bankruptcy Rule 6004 states, in part, as follows:

(a) <u>Notice of Proposed Use, Sale or Lease of Property.</u> Notice of a proposed use, sale or lease of property, other than in the ordinary course of business shall be given pursuant to Rule 2002(a)(2), (c)(1), (i) and (k)...

43. This Application is being served in accordance with the applicable provisions of Federal Rule of Bankruptcy Procedure 2002 on (a) all of the Debtor's creditors; (b) all parties filing Notices of Appearance in these proceedings, and (c) the Office of the United States Trustee, so as to provide at least twenty-one (21) days notice of the relief requested, thereby satisfying Federal Rule of Bankruptcy Procedure 2002(a)(2) and (k). Additionally, the Debtor respectfully submits that the descriptions and notices provided by this Application and exhibits hereto provide adequate notice of the terms and conditions of the proposed sale, thereby

satisfying Federal Rule of Bankruptcy Procedure 2002(c)(1). A committee has been appointed herein, and therefore Federal Rule of Bankruptcy Procedure 2002(i) is applicable and therefore counsel for the Committee and all Members of the Committee will be served. Finally, Debtor will serve all parties who have expressed an interest in buying the Purchased Assets. It is respectfully submitted that Application constitutes good and sufficient notice hereof.

## GOOD FAITH PURCHASER STATUS

44. Section 363(m) of the Bankruptcy Code provides as follows:

(m) The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

45. The Debtor respectfully requests that the Court enter an order granting Friends "good faith purchaser" status pursuant to Section 363(m) of the Bankruptcy Code.

46. As set forth hereinabove, Friends has negotiated, by and through its counsel, and entered into the Contracts in good faith and at arms length with the Debtor. Friends is a third party unrelated to the Debtor, is not an "insider" of the Debtor within the meaning of Section 101(31) of the Bankruptcy Code, and is not controlled by, or acting on behalf of, any insider of the Debtor or the Debtor itself. In addition, Friends agreed to purchase the Purchased Assets, and became aware of the sale of the Purchased Assets based upon its status and involvement in the jewelry industry for many years. The Purchased Assets have been party to an open and notorious marketing by Debtor, its principals and its attorneys for many months.

47. The Debtor submits that Friends has taken part in the transaction contemplated hereby in a manner consistent with granting it "good faith purchaser" status, and the protections concomitant with such status.

**WHEREFORE,** the Debtor respectfully requests that the Court enter an Order: (A) authorizing and approving the sale of the Purchased Assets to Friends, free and clear of all liens, claims and encumbrances pursuant to 11 U.S.C. Sections 363(b) and (f) in accordance with the Contract and (b) granting Purchaser good faith purchaser status pursuant to Section 363(m) of the Code, together with such other and further relief as is just under the circumstances, for all of which no previous request has been made to this or any other Court.

Dated: Harrison, New York
April 26, 2010

>ALTER, GOLDMAN & BRESCIA, LLP
>Attorneys for the Debtor
>550 Mamaroneck Avenue
>Harrison, NY 10528
>(914) 670-0030
>
>By:/s/Bruce R. Alter
>  Bruce R. Alter (0457)